UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* * * * * * * * * * * * * * * * * *

United States of America,

        Plaintiff,

                        REPORT AND RECOMMENDATION

vs.

Robert Charles Gutz (01), and
Mindy Lea Lackore-Mueller,
a/k/a Mindy Lea Lackore (02),

        Defendants.             Crim. No. 08-260 (DSD/RLE)

\* * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Motions of the Defendants Robert Charles Gutz ("Gutz"), and Mindy Lea Lackore-Mueller ("Lackore"):

    1.    Lackore's Motion to Suppress Statements, Admissions, and Answers;

    2.    Lackore's Motion to Suppress Evidence Obtained as a Result of Search and Seizure;

    3.    Gutz's Motion to Suppress Statements, Admissions, and Answers; and

      4.     Gutz's Motion to Suppress Evidence Obtained as a
            Result of Search and Seizure.

A Hearing on the Motions was conducted on September 30, 2008, at which time, Gutz appeared personally, and by Douglas A. Myren, Esq.; Lackore appeared personally, and by Mark D. Larsen and Sara Stroble, Esqs.; and the Government appeared by Nancy E. Brasel, Assistant United States Attorney.

For reasons which follow, we recommend that Lackore's Motion to Suppress Statements, Admissions, and Answers be denied as moot, and that Lackore's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied. We further recommend that Gutz's Motion to Suppress Statements, Admissions, and Answers be deferred, pending the completion of a psychological evaluation, if Gutz files such a Motion which, we understood, would be filed shortly after the Motions Hearing.[1] As to Gutz's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, we recommend that the Motion be denied.

---

[1]We do not intend to afford Gutz an indefinite extension to file any Motion for the conduct of a psychological or psychiatric examination. Therefore, by separate Order, we direct counsel for Gutz to advise this Court, forthwith, as to whether Gutz intends to proceed with the conduct of a psychiatric evaluation, and how Gutz intends to proceed, if at all, with his Motion to Suppress his statements to law enforcement.

## II. Factual Background

The Defendants are both charged with one Count of Conspiracy to Distribute Methamphetamine, in violation of Title 18 U.S.C. §§841(a)(1), 841(b)(1)(A), and 846; one Count of Possession with Intent to Distribute Methamphetamine, in violation of Title 18 U.S.C. §§841(a)(1) and 841(b)(1)(B); and one Count of Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of Title 18 U.S.C. §§941(c)(1)(A) and 941(c)(2).  In addition, Gutz is charged with one Count of being a Felon in Possession of a Firearm, in violation of Title 18 U.S.C. §§922(g)(1) and 924 (a)(2).  The events that gave rise to those charges are said to have occurred from in or about 2007, through on or about June 25, 2008, in this State and District.  As pertinent to the charges, and to the Motions now before us, the operative facts may be briefly summarized.[2]

---

[2] Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record."  See, United States v. Santiago, 410 F.3d 193, 198 (5th Cir. 2005), cert. denied, 126 S.Ct. 1565 (2006).  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

At the Hearing, John M. Nordberg, Jr. ("Nordberg"), who is a Special Agent with the Minnesota Bureau of Criminal Apprehension ("BCA"), and who is the Case Agent assigned to this matter, testified at the instance of the Government. In his testimony, Nordberg stated that, on June 25, 2008, he received a telephone call from Russell French ("French"), who is an officer with the Moose Lake Police Department. French informed Nordberg that, on June 25, 2008, he received a citizen complaint of suspicious activity, involving a particular vehicle. French located the vehicle, in the area of Moose Lake which had been described by the concerned citizen, and made contact with its occupants, who were later identified as Gutz and Lackore. Ultimately, Gutz attempted to flee in that vehicle.

During a subsequent high-speed chase, Gutz threw a number of items from the vehicle, including a firearm. Nordberg testified that Gutz was eventually arrested in Pine County, Minnesota, and transported to the Carlton County Jail. Nordberg further testified that, on the same date, Lackore was arrested in Barnum, Minnesota, and transported to the Carlton County Jail. According to Nordberg, Gutz informed officers, during the course of his arrest, where they could find Lackore. Nordberg testified that, after the Defendants' arrests, the Carlton County Attorney's Office initiated criminal proceedings in State Court.

On June 26, 2008, Nordberg interviewed Gutz at the Carlton County Jail, with the assistance of another officer. Nordberg attested that Gutz was advised of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), prior to the interview. During the interview, Gutz informed Nordberg that Lackore was a co-conspirator in his methamphetamine distribution business, in both Minneapolis and the Duluth-Superior area. Gutz also informed Nordberg of his interest in working as an informant for the BCA. Nordberg attested that, prior to the interview, he knew that Gutz had previously worked as an informant for several other law enforcement agencies, including the St. Paul Police Department and the Drug Enforcement Administration ("DEA"), but that he subsequently learned that Gutz was not an active informant with any agency, at the time of his arrest. According to Nordberg, French learned of Gutz's history as an informant on June 25, 2008, from Mike Meyer ("Meyer"), who is an investigator with the St. Paul Police Department, and from Terry Olstad ("Olstad"), who is a Special Agent with the DEA.

Nordberg testified that Gutz contacted both Meyer and Olstad, after his arrest, in order to express his interest in serving as an informant. Accordingly, Nordberg spoke with Meyer, after Gutz's interview, to inquire into Gutz's work as an informant. According to Nordberg, Meyer advised that he did not intend to make use of Gutz as

an informant. Nordberg also testified that he has since learned that Gutz was never formally processed to become an informant for the DEA.

Some time after Nordberg's interview with Gutz, Gutz's mother contacted Nordberg, and asked him to visit her son at the Carlton County Jail. At that time, Nordberg knew that the United States Attorney's Office was considering Federal charges against Gutz and Lackore. Accordingly, Nordberg visited Gutz at the Carlton County Jail, and advised him of the possibility of a Federal prosecution. According to Nordberg, Gutz again expressed his interest in working as an informant.

Nordberg testified that he made contact with Gutz for the third time, when he and French transported Gutz from the Carlton County Jail to Minneapolis, for his initial appearance on Federal charges. According to Nordberg, during the trip, Gutz told Nordberg and French that he had received a letter from Lackore, which disclosed her knowledge that a firearm had been in the vehicle on the date of their arrest. See, Government Exhibit 4.[3] Gutz gave the letter to Nordberg, and asked him to read it. In pertinent part, the letter states, "I'm sorry I ever insisted on having that gun with us but It [sic] made me feel safer and baby thats [sic] hard for me to admit." Nordberg

---

[3]At the Hearing, the Government proffered Lackore's letter as an Exhibit, without objection from the Defendants.

attested that he read the letter and, upon their arrival in Minneapolis, he made a copy of the letter, and then returned the original to Gutz.

In his testimony, Nordberg stated that he did not instruct Gutz to elicit the letter, or any other evidence from Lackore, nor did he instruct Gutz to initiate any contact with Lackore. He further testified that he was not aware of any no-contact Order, between Gutz and Lackore, and that he did not instruct Gutz to cease all contact with Lackore. Nordberg also testified that, although Gutz has continually expressed his interest in working as an informant, Gutz has never worked as an informant for the BCA. Nordberg stated that the BCA considered using Gutz as an informant, but ultimately decided against it, given Gutz's criminal history.

Lastly, upon cross-examination, Nordberg acknowledged that Lackore had been appointed counsel in the State criminal proceeding, although he could not recall when Lackore made her initial appearance in State Court. Nordberg also testified that he had a brief conversation with Lackore's State Public Defender, after Lackore's initial appearance in State Court, in order to advise that the case had been presented to the United States Attorney's Office for possible Federal charges.

We turn to consider the Defendants' Motions.

III.  Discussion

A.  Lackore's Motion to Suppress Statements, Admissions, and Answers.

With respect to Lackore's Motion to Suppress Statements, the Government advises that it is unaware of any custodial statements which were made by Lackore, and accordingly, it does not intend to make use of any such statements at Trial.  Therefore, we recommend that the Motion be denied, as moot.

B.  Lackore's Motion to Suppress Evidence.

1.  Standard of Review.  Government agents are not required to administer Miranda warnings to everyone whom they question.  See, Oregon v. Mathiason, 429 U.S. 492, 495 (1977).  Rather, Miranda warnings are required for official interrogations where a person has been "'taken into custody or otherwise deprived of his freedom of action in any significant way.'"  Stansbury v. California, 511 U.S. 318, 322 (1994), quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966); United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985); Berkemer v. McCarty, 468 U.S. 420, 428-29 (1984).

The Sixth Amendment additionally provides that, "[i]n all criminal trials, the accused shall enjoy the right * * * to have the assistance of counsel for his defense." This right to counsel attaches "at or after the initiation of adversary judicial criminal

proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment" and, once invoked, the right cannot be waived in a subsequent police-initiated custodial interview.  See, Kirby v. Illinois, 406 U.S. 682, 689 (1972); see also, Michigan v. Jackson, 475 U.S. 625, 636 (1986).  "In a line of cases involving incriminating statements made to police informants, the Supreme Court has held that an individual who stands indicted of a crime is denied his right to counsel when agents of the state circumvent that right by 'deliberately elicit[ing]' inculpatory statements from him in the absence of his counsel, absent a voluntary and knowing waiver."  Bey v. Morton, 124 F.3d 524, 528 (3rd Cir. 1997), citing Michigan v. Harvey, 494 U.S. 344, 348-49 (1990), Kuhlmann v. Wilson, 477 U.S. 436, 457 (1986), Maine v. Moulton, 474 U.S. 159, 173 (1985), United States v. Henry, 447 U.S. 264, 270 (1980), and Massiah v. United States, 377 U.S. 201, 206 (1964).  This protection applies to "'indirect and surreptitious interrogations as well as those conducted in the jailhouse[.]'"  Id. at 528-29, quoting Massiah v. United States, supra at 206; see also, Moore v. United States, 178 F.3d 994, 999 (8th Cir. 1999), cert. denied, 528 U.S. 943 (1999);  United States v. Williams, 2007 WL 3037349 at *4 (D. Minn., October 16, 2007).

As noted by the Bey Court, "[t]he deliberate elicitation doctrine was first recognized in Massiah, where the defendant, released on bail, made numerous incriminating statements to his codefendant, who had agreed to act as a government informant and had permitted the installation of a surveillance device in his automobile." Id. at 528, citing Massiah v. United States, supra at 206. In Massiah, the Supreme Court ultimately held that the defendant's confession had been "'deliberately elicited' by the police in violation of both the Fifth and Sixth Amendments." Id. at 528-29, quoting Massiah v. United States, supra at 206.

  2. Legal Analysis. In her Motion to Suppress Evidence, Lackore challenges the letter, which she sent to Gutz, based upon her contention that Gutz was acting as an agent of law enforcement, in violation of her Sixth Amendment right to counsel. According to Lackore, Gutz intends to invoke his Fifth Amendment privilege against testimony, and the Government refuses to compel his testimony, by way of a grant of immunity. Accordingly, Lackore seeks an adverse inference instruction for the Jury that, if Gutz were to testify, his testimony would be adverse to the Government, concerning Gutz's alleged status as an informant.

However, in order to prevail upon her claim of a Massiah violation, Lackore "need[s] to show that [her] right to counsel had attached, that [Gutz] was a

government agent, and that [Gutz] deliberately elicited incriminating statements from [her]." Moore v. United States, supra at 999; see also, United States v. Williams, supra at *4 (citing same). Here, there does not appear to be any dispute that Lackore's right to counsel had attached, by virtue of the State Court proceedings, and accordingly, we turn to consider whether Gutz was acting as a government agent.

"An informant becomes a government agent for purposes of [Massiah] **only** when the informant has been instructed by the police to get information about the particular defendant." United States v. Johnson, 338 F.3d 918, 921 (8th Cir. 2003) [emphasis added], cert. denied, 543 U.S. 829 (2004), quoting Moore v. United States, supra at 999, quoting, in turn, United States v. Birbal, 113 F.3d 342, 346 (2nd Cir. 1997)(collecting cases). Here, the Government denies that Gutz was a government agent, at the time that he received Lackore's letter, and there is nothing in the Record to support Lackore's claim to the contrary. See, United States v. Skorniak, 208 F.3d 219, 219, 2000 WL 297071 at *1 (8th Cir. 2000)[Table disposition]; United States v. Eye, 2008 WL 1776402 at *6-7 (W.D. Mo., April 15, 2008). Nordberg testified unequivocally that he had never instructed Gutz to elicit information from Lackore, and he further testified that Gutz had never worked as an informant for the BCA. Nor is there any evidence, on this Record, that Gutz deliberately elicited the letter, and the

statements contained therein, from Lackore, whether of his own accord, or at the instruction of any law enforcement agent.

Furthermore, we find Lackore's argument, that the Government should be compelled to grant Gutz immunity, or face an adverse instruction at Trial, to be entirely without merit. "It is well settled that an accused's right to compulsory process must yield to a witness's Fifth Amendment privilege not to give testimony that would tend to incriminate him or her." United States v. Jones, 512 F.3d 1007, 1008-09 (8th Cir. 2008), quoting United States v. Blaylock, 421 F.3d 758, 770 (8th Cir. 2005), cert. denied, 546 U.S. 1126 (2006), quoting, in turn, United States v. Habhab, 132 F.3d 410, 416 (8th Cir. 1997). This is true even when the witness whose testimony is sought is a co-defendant. See, United States v. Blaylock, supra at 770; United States v. Velasquez, 141 F.3d 1280, 1282 (8th Cir. 1998), cert. denied, 525 U.S. 897 (1998). Accordingly, "[Lackore's] Sixth Amendment right to compulsory process does not include the right to compel [Gutz] or any other witness to waive his or her Fifth Amendment privilege against self-incrimination." Id., citing United States v. Bowling, 239 F.3d 973, 976 (8th Cir. 2001), and United States v. Robaina, 39 F.3d 858, 862 (8th Cir. 1994), citing in turn Kastigar v. United States, 406 U.S. 441, 444 (1972).

Nor is the Government required to provide immunity to Gutz, in whole or in part, so that Lackore can call Gutz as a witness. See, <u>United States v. Bowling</u>, supra at 976-77 (observing that "[i]t is well settled that 'use immunity can only be granted when it is formally requested by the Attorney General,'" and rejecting the defendant's argument that "the district court should have compelled the government to request immunity for Small or the district court should have granted judicial immunity to Small and limited the examination of Small to the events for which Bowling was on trial"); see also, <u>United States v. Campbell</u>, 410 F.3d 456, 464 (8th Cir. 2005)(same), cert. denied, 546 U.S. 966 (2005); <u>United States v. Washington</u>, 318 F.3d 845, 856 (8th Cir. 2003)(same), cert. denied, 540 U.S. 899 (2003).

In sum, we find no evidence that Gutz was acting as a government agent, or that he deliberately elicited Lackore's letter, before providing it to law enforcement. Nor do we find any basis for Lackore's claim that the Government is required to grant immunity to Gutz, or else face the consequences of an adverse instruction. Therefore, we recommend that Lackore's Motion to Suppress Evidence be denied in its entirety.[4]

---

[4]At the Hearing, the Government advised that a Search Warrant was obtained, and executed, for Lackore's jail cell, and her property at the Sherburne County Jail, and a number of letters, cards, and miscellaneous writings, were seized pursuant to that Warrant. However, the Government represented that it does not intend to introduce that evidence at Trial, and it further represented that it will make the letters,

  C. <u>Gutz's Motion to Suppress Statements, Admissions, and Answers</u>.

  With respect to Gutz's Motion to Suppress Statements, the Government advises that Gutz made several custodial statements, which it intends to introduce at Trial. However, at the Hearing, counsel for Gutz advised the Court of his intention to file a Motion for a Psychological Evaluation, and he further advised that Gutz is amenable to undergoing such an evaluation. Accordingly, counsel for Gutz asked that we defer any ruling on his Motion to Suppress Statements, until more information can be obtained concerning Gutz's psychological state. We agree that such is the appropriate course of action, and therefore, we recommend that a ruling on Gutz's Motion to Suppress Statements be deferred, pending the completion of a psychological evaluation. As we have previously related, under separate Order, we direct counsel for Gutz to make his intentions known, forthwith, with respect to the conduct of a psychological evaluation, and how Gutz intends to advance his Motion to Suppress his statements, if at all. See, <u>footnote 1</u>, supra.[5]

---

cards, and writings, available to Lackore's counsel for review. Accordingly, to the extent that Lackore implicitly seeks the suppression of that evidence, we recommend that her Motion be denied, as moot.

 [5]By way of further background, on July 30, 2008, Gutz was originally appointed counsel. See, <u>Docket No. 8</u>. After his original counsel had filed Gutz's pre-trial Motions, by Order dated September 16, 2008, we directed that substitute

D.  <u>Gutz's Motion to Suppress Evidence Obtained as a Result of Search and Seizure</u>.

Lastly, we note that Gutz has filed a Motion to Suppress Evidence Obtained as a Result of Search and Seizure, which is not supported by any memorandum, testimony, or exhibits, and which does not include any details which would explain the basis for Gutz's constitutional claim, nor identify which search, or searches, Gutz purports to challenge. In connection with the criminal Complaint, Nordberg provided a supporting Affidavit, in which he disclosed that, following Gutz's arrest, law enforcement obtained a Search Warrant for Gutz's vehicle. See, <u>Complaint</u>, <u>Docket No. 1</u>, Affidavit of John Nordberg at ¶4. A search of the vehicle yielded 171 grams of a substance which field-tested positive for methamphetamine, as well as packaging materials. <u>Id.</u> In addition, $10,000.00 in cash was recovered from Gutz, and the vehicle. <u>Id.</u>

Assuming that Gutz seeks to challenge the search of his person, and his vehicle, we have not been provided with any basis to conclude that either search violated Gutz's Fourth Amendment rights. Of course, "[s]earches conducted without a warrant

---

counsel be appointed, based upon the original counsel's conflict of interest. See, <u>Docket No. 66</u>. In order to permit Gutz's new counsel sufficient time to become familiar with the case, we postponed the Suppression Hearing until September 30, 2008. See, <u>Docket No. 100</u>.

are per se unreasonable, subject to a few well-established exceptions." United States v. Kennedy, 427 F.3d 1136, 1140 (8th Cir. 2005), citing United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004). The burden lies on the Government to establish the existence of an exception to the Warrant requirement. Id.

Nonetheless, one such exception is a search incident to a valid arrest. See, e.g., New York v. Belton, 453 U.S. 454, 461 (1981); Chimel v. California, 395 U.S. 752, 762 (1969); United States v. Klein, 13 F.3d 1182, 1184 (8th Cir. 1994), cert. denied, 512 U.S. 1226 (1994). As our Court of Appeals has explained:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.

Conrod v. Davis, 120 F.3d 92, 96 (8th Cir. 1997), cert. denied, 523 U.S. 1081 (1998), citing United States v. Robinson, 414 U.S. 218, 235 (1973).

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." Id.; see also, Curd v. City Court of Judsonia, Arkansas, 141 F.3d 839, 842 (8th Cir. 1998)("Warrantless searches incident to a custodial arrest are 'justified by the reasonableness of searching for weapons,

instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained.'"), quoting United States v. Edwards, 415 U.S. 800, 802-03 (1974). On this Record, we have no reason to conclude that the search of Gutz's person was unconstitutional, and we recommend that his Motion be denied in this respect.

Moreover, a search incident to arrest may include all areas within the immediate control of the person, including the passenger compartment of an automobile occupied by an arrestee at the time of his arrest. See, New York v. Belton, supra at 460. The scope of a permissible vehicle search extends to all containers within the passenger compartment of the automobile, including "glove compartments, consoles, and other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, and the like." Id. at 1261, n. 4; accord, United States v. McCready, 774 F.2d 868, 871-872 (8th Cir. 1985)(glove compartment); see also, United States v. Pogemiller, 375 F.3d 686, 688 (8th Cir. 2004)(trap door which leads to an area connecting the trunk of the vehicle to the vehicle's back seat); United States v. Caldwell, 97 F.3d 1063, 1067 (8th Cir. 1996)(hatchback area); United States v. Veras, 51 F.3d 1365, 1372 (7th Cir. 1995) (secret compartments located within the back seat). Further, an officer need not have had contact with an arrestee prior to his exit from the

vehicle, so long the search of the automobile is contemporaneous with the arrest. United States v. Pogemiller, supra at 687, citing Thornton v. United States, 541 U.S. 615 (2004).

Here, however, law enforcement obtained a Search Warrant before searching Gutz's vehicle. The Warrant has not been provided for our review, nor are we able to ascertain, on this Record, any basis for suppressing the evidence which was recovered as a result of that Warrant. Accordingly, we recommend that Gutz's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied, in its entirety.[6]

NOW, THEREFORE, It is --

RECOMMENDED:

1. That Lackore's Motion to Suppress Statements, Admissions, and Answers [Docket No. 27] be DENIED, as moot.

---

[6]While we allow for the potential that Gutz wanted a deferral on this Motion as well, unlike his Motion to Suppress his Statements, he has not made that intention known to this Court. Nonetheless, if Gutz wishes to pursue his Motion to Suppress the evidence obtained by search and seizure, we are prepared to consider such evidence as the parties submit to the Court. However, in the interests of expedition, we have issued this Report and Recommendation on the basis of the evidence submitted at the Motions Hearing, and on their express representations to the Court.

    2.    That Lackore's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 28] be DENIED.

    3.    That Gutz's Motion to Suppress Statements, Admissions, and Answers [Docket No. 55] be DEFERRED, pending the completion of a psychological evaluation.

    4.    That Gutz's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 61] be DENIED.

Dated: October 9, 2008                      *s/Raymond L. Erickson*
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 27, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure

to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 27, 2008**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.